## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 25 2015, 8:19 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Bruce W. Graham | Gregory F. Zoeller |
| Graham Law Firm P.C. | Attorney General of Indiana |
| Lafayette, Indiana | |
| | Paula J. Beller |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tiffany Mounts, | November 25, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 79A04-1505-CR-392 |
| v. | Appeal from the Tippecanoe Superior Court |
| State of Indiana, | The Honorable Steven P. Meyer |
| *Appellee-Plaintiff* | Trial Court Cause No. 79D02-1411-F3-4 |

**Bailey, Judge.**

# Case Summary

Tiffany Mounts ("Mounts") pleaded guilty to Robbery While Armed with a Deadly Weapon[1] and Criminal Confinement While Armed with a Deadly Weapon,[2] both as Level 3 felonies. After accepting her guilty plea, the trial court sentenced Mounts to thirteen years imprisonment for each offense, with four years suspended to probation and the sentences run concurrent to one another. Mounts now appeals and presents a single issue for our review, which we restate as whether the trial court found an improper aggravating circumstance at sentencing.

We affirm.

# Facts and Procedural History

On November 5, 2014, Mounts, together with Jacob Lumbley ("Lumbley") and Miguel Garcia ("Garcia") robbed a Village Pantry convenience store in Lafayette. During the commission of the offense, Lumbley was armed with a shotgun, and Garcia was armed with a knife. Mounts's role was to take money, alcohol, and food from the store during the robbery.

The trio entered the store, and Lumbley and Garcia ordered two store employees to freeze and get on the floor. The employees complied, and

---

[1] Ind. Code § 35-42-5-1.

[2] I.C. §§ 35-42-3-3(a) & (b)(2).

Mounts collected some food, money, cigarettes, and alcohol from the store. After the trio left the store, they divided up among themselves the items Mounts had taken.

[5] Officers from the Lafayette Police Department responded to an armed robbery call from the convenience store. A K9 search led police to a vacant house where Garcia and Mounts were found, along with a shotgun and items similar to those reported as having been taken from the store. Mounts and Garcia were arrested; Lumbley was identified by Mounts and Garcia, and was arrested on November 6, 2014.

[6] On November 12, 2014, the State charged Mounts with Conspiracy to Commit Robbery While Armed with a Deadly Weapon, Robbery While Armed with a Deadly Weapon, and two counts of Criminal Confinement While Armed with a Deadly Weapon, all as Level 3 felonies; and two counts of Theft, as Class A misdemeanors.

[7] On April 1, 2015, Mounts and the State entered into a plea agreement, whereby Mounts agreed to plead guilty to one count each of Robbery While Armed with a Deadly Weapon and Criminal Confinement While Armed with a Deadly Weapon, as Level 3 felonies, and to cooperate with the State's efforts to prosecute Garcia and Lumbley. In return, the State agreed to dismiss the other charges against Mounts. Sentencing was left to the discretion of the trial court.

[8] On April 1, 2015, the trial court accepted the plea agreement and entered judgments of conviction against Mounts. A sentencing hearing was conducted

on May 1, 2015. At the conclusion of the sentencing hearing, the trial court sentenced Mounts to thirteen years imprisonment for each of her two convictions. The court suspended four of these years to probation; two years of the probationary period were to be served in the Tippecanoe County Community Corrections, and two years were to be served on supervised probation.

This appeal ensued.

# Discussion and Decision

On appeal, Mounts challenges the trial court's sentencing decision, arguing that the trial court abused its discretion in finding aggravating circumstances. Our supreme court has held:

> [T]he imposition of sentence and the review of sentences on appeal should proceed as follows:
>
> 1. The trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence.
>
> 2. The reasons given, and the omission of reasons arguably supported by the record, are reviewable on appeal for abuse of discretion.
>
> 3. The relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse.

> 4. Appellate review of the merits of a sentence may be sought on the grounds outlined in Appellate Rule 7(B).

*Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

We review sentencing decisions for an abuse of discretion. *Id.* at 490. While a trial court may abuse its discretion by issuing a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration," a trial court can no longer "be said to have abused its discretion in failing to 'properly weigh' such factors." *Id.* (quoting *Jackson v. State*, 729 N.E.2d 147, 155 (Ind. 2000); *Morgan v. State*, 675 N.E.2d 1067, 1073-74 (Ind. 1996)). Where the trial court has abused its discretion, we will not reverse a sentence if it is not inappropriate under Appellate Rule 7(B). *Felder v. State*, 870 N.E.2d 554, 558 (Ind. Ct. App. 2007) (citing *Windhorst v. State*, 868 N.E.2d 504, 507 (Ind. 2007)).

Here, Mounts argues that the trial court abused its discretion because it relied upon the material element of a crime as an aggravating circumstance. As our supreme court held in *Anglemyer*, "a trial judge may impose any sentence within the statutory range without regard to the existence of aggravating or mitigating factors." 868 N.E.2d at 489. "[U]nder this scheme trial courts technically do not 'enhance' sentences upon the finding of aggravators; accordingly there is no impermissible double enhancement where the trial court relies on the material element of a crime as an aggravating circumstance." *Gomillia v. State*, 13 N.E.3d 846, 852 (Ind. 2014). But reliance upon a material element of a crime is

improper "in some circumstances." *Id.* "Where a trial court's reason for imposing a sentence greater than the advisory sentence includes material elements of the offense, absent something unique about the circumstances that would justify deviating from the advisory sentence, that reason is 'improper as a matter of law.'" *Id.* at 852-53 (quoting *Anglemyer*, 868 N.E.2d at 491).

[13] Here, Mounts contends that the trial court abused its discretion when it found as aggravating circumstances:

> [I]t's already a serious offense because it's a robbery while armed with a deadly weapon and the seriousness … is that it was [a] robbery of a local convenience store here and that placed some victims in fear by the use of the deadly weapon and so that's the factor in which I was trying to get at when I, when I used the seriousness of the offense.

Tr. at 62. Mounts argues that because her convictions for Robbery and Criminal Confinement, as Level 3 felonies, both required the use of a deadly weapon and placing someone in fear, the trial court improperly found as an aggravating circumstance Mounts's having "placed some victims in fear by the use of a deadly weapon."

[14] The statutory elements for the offense of Criminal Confinement do not, by their terms, require that a victim have been placed in fear. The statute requires only use of a deadly weapon as a means of imposing the confinement. I.C. § 35-42-3-3. And while the Robbery statute includes placing someone in fear as an element, it does so in the alternative: "A person who knowingly or intentionally takes property from another person or from the presence of

another person: (1) by using or threatening the use of force on any person; *or* (2) by putting any person in fear." I.C. § 35-42-5-1 (emphasis added). The facts used to establish Mounts's guilt for purposes of her guilty plea indicated both that force was threatened *and* that the store employees were afraid. Moreover, the trial court noted the presence of two store employees, which also distinguishes the offenses Mounts committed from their statutory definitions. The trial court's finding of fear as an aggravating circumstance was not an abuse of discretion.

[15] Mounts also argues that, even if the aggravating circumstances were not improperly found, nevertheless her sentence is inappropriate in light of the nature of her offenses and her character. Mounts was convicted of two Level 3 felonies. For each conviction, Mounts faced a sentencing range of between three and sixteen years imprisonment, with an advisory term of nine years. I.C. § 35-50-2-5(b). Mounts was sentenced to terms of thirteen years for each of her offenses, with the sentences run concurrent with one another, and a total of four years of the aggregate sentence suspended to probation.

[16] With respect to the nature of the offenses, Mounts, in cooperation with two other individuals, participated in the robbery of a convenience store. Mounts did not personally threaten the employees of the store, but nevertheless acted in confederation with individuals wielding a knife and a shotgun. These actions placed multiple persons in fear. Mounts and her cohorts took a small amount of property from the store, consisting of food, alcohol, cigarettes, and some

money. Elevation of her sentence beyond the statutory advisory is, under these circumstances, not improper.

[17] Mounts's character speaks very poorly for her. Mounts was nineteen years of age when she committed the instant offenses, but her first encounter with the juvenile justice system occurred in 2001. From 2009 onward, Mounts was in near-constant contact with the juvenile justice system. In January 2010, Mounts was adjudicated a juvenile delinquent for conduct that, if committed by an adult, would have constituted Dealing in a Controlled Substance, as a Class B felony; Possession of a Controlled Substance, as a Class C felony; and Intimidation, as a Class A misdemeanor. While on house arrest as a result of this adjudication, Mounts ran away from her placement and used illegal drugs. Upon being placed in alternate housing, Mounts committed numerous disciplinary violations, including smoking, disrespectful behavior, running away from the home, tampering with the belongings of a fellow resident with special needs, and planning to feed human waste to an individual with special needs. Mounts was again adjudicated a juvenile delinquent in January 2013, for conduct that would constitute Escape, as a Class C felony, if committed by an adult. As an adult, in September 2013, Mounts was convicted of misdemeanor driving offenses.

[18] Mounts was homeless at the time of the instant offenses, and had prior mental health and substance use problems. However, efforts to treat her mental health issues were frustrated because, by her own admission, she would sell the prescribed medications.

Mounts's conduct after her arrest for the present offenses also does not speak well of her character. Though she obtained a GED while awaiting trial, she also committed numerous violations of jail conduct rules, including tattooing, flooding jail areas, and destroying property. As a result, Mounts had been placed into a segregation unit in the jail. And while Mounts entered a guilty plea in this case and cooperated with law enforcement, she benefited from her plea by having four of the six criminal counts against her dismissed.

In light of the nature of Mounts's offenses and her character, we do not consider as inappropriate an aggregate term of imprisonment of thirteen years.

Affirmed.

Baker, J., and Mathias, J., concur.